UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSHUA STURTZ, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>LAUREL MEDICAL SUPPLIES, INC. d/b/a LAUREL MEDICAL SOLUTIONS,<br><br>    Defendant. | Case No. 3:24-cv-00050-KRG<br><br>The Honorable Kim R. Gibson |

**PLAINTIFF'S UNOPPOSED MOTION TO APPROVE
COLLECTIVE ACTION SETTLEMENT AND ATTORNEY FEES
<u>WITH MEMORANDUM IN SUPPORT</u>**

Named Plaintiff, Joshua Sturtz ("Mr. Sturtz" or "Named Plaintiff"), respectfully moves for approval of the Settlement reached in this Fair Labor Standards Act collective action brought on behalf of all persons employed by Defendant, Laurel Medical Supplies, Inc. d/b/a Laurel Medical Solutions ("Laurel Medical" or "Defendant") between March 6, 2021, until March 6, 2024, who allegedly did not receive all wages. Defendant does not oppose this Motion. Together, Named Plaintiff and Defendant shall be referred to as the "Parties."

To effectuate a binding release, FLSA settlements generally require judicial approval. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982); *accord Copeland v. ABB, Inc.*, 521 F.3d 1010, 1014 (8th Cir. 2008) (FLSA rights may be released by stipulated judgment). A copy of the Parties' confidential Settlement Agreement and Release of Claims ("Settlement Agreement") is attached hereto as Exhibit 1. Named Plaintiff respectfully requests that this Honorable Court enter an Order granting this motion and approving the Parties' Settlement, and dismissing the instant action and all claims thereunder with prejudice.

**MEMORANDUM IN SUPPORT**

Named Plaintiff and Defendant have reached a settlement of this FLSA collective action that provides participating class members monetary relief for a portion of alleged unpaid wages earned as between March 6, 2021, until March 6, 2024, plus an equal amount in liquidated damages, after payment of attorneys' fees and related expenses.[1]  This outcome is a model of efficient resolution, achieved early in the case by experienced counsel for both sides, with minimal burden on the Court.  The Settlement should be approved.

Settlement was reached after the Parties' investigation of the facts, production by Defendant of case-critical payroll and time records, written and verbal correspondence with Named Plaintiff and other potential class members by Plaintiffs' counsel, and significant settlement negotiations between counsel for each of the Parties, including a mediation on July 10, 2024, before Sally Cimini, Esquire, of Sally Cimini Law & Mediation, LLC, to bring about a resolution.  In order to settle this matter, Defendant has agreed to pay a "Global Settlement Amount" of $65,000.00, inclusive of attorneys' fees and costs, to resolve all claims of the Plaintiff Class for unpaid wages that were alleged in the Lawsuit.  The Global Settlement Amount shall be allocated as follows: (1) $33,355.00 shall be allocated to pay the claims of the FLSA Settlement Class (the "FLSA Settlement Fund"); (2) $24,145.00, or such other amount

---

[1] All statements made herein regarding monetary relief to the participating class members alleged unpaid wages between March 6, 2021, until March 6, 2024, plus liquidated damages and a total FLSA Settlement Fund (as defined *infra*) of $33,355.00 reflect the relief that would be provided under the terms of the Parties' Settlement Agreement if this Court approves the settlement and the requests for attorneys' fees and costs and Named Plaintiffs' service awards in the amounts requested herein.  Should the Court approve the Settlement and award attorneys' fees and costs and/or service awards in amounts less than the amounts requested, the amount of the FLSA Settlement Fund and individual awards for each participating class member will increase, as the FLSA Settlement Fund is equal to the difference between the Global Settlement Amount of $65,000.00 and the amounts awarded as attorneys' fees and costs, and service awards.

approved by the Court, shall be allocated for attorneys' fees and costs; and (3) $7,500, or such other amount approved by the Court, shall be allocated to Named Plaintiff for a service award.

Based on the time and payroll data exchanged by the Parties, and their independent investigation of the relevant facts, Named Plaintiff's counsel believes the $33,355.00 FLSA Settlement Fund provides participating class members monetary relief of a substantial portion of their alleged unpaid wages during the period March 6, 2021, until March 6, 2024, plus liquidated damages, free and clear of attorneys' fees and costs and Named Plaintiff's service award.

**Facts and Procedural History**

On March 6, 2024, Named Plaintiff filed a class and collective action Complaint against Defendant on behalf of himself and others similarly situated alleging violations of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), the Pennsylvania Minimum Wage Act of 1968, 43 P.S. § 333.101 *et seq.* ("PMWA"), and the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq.* ("PWPCL"), by failing to pay Named Plaintiff and similarly situated employees certain wages due for time worked. (Doc. 1). Defendant filed an Answer denying the material allegations of the Complaint on April 2, 2024. (Doc. 8).

The Parties attended a Mediation before Sally Cimini, Esquire of Sally Cimini Law & Mediation, LLC on July 10, 2024, and along with prior negotiations between counsel for the Parties, an amicable compromise was reached at the conclusion of the Mediation. The attorneys who negotiated this agreement are experienced wage and hour litigators and vigorously represented their clients' respective interests.

During the Settlement Conference and throughout their prior settlement negotiations, the Parties embarked on an investigation and exchange of information to ensure an informed and constructive discussion. The Parties exchanged critical class, payroll, and compensation data,

and Named Plaintiff's counsel consulted with Named Plaintiff regarding this data at the Settlement Conference and throughout all prior settlement negotiations. In preparation for the Mediation and throughout their prior settlement negotiations, the Parties evaluated the payroll data, as well as defenses which Defendant intended to raise to Named Plaintiff's claims. Negotiations were robust as both sides zealously advocated their interests. As a result of discussions amongst their attorneys, the Parties were able to reach a mutually acceptable settlement.

### Settlement Terms

The Parties have executed a Settlement Agreement that allows eligible class members to participate in a settlement of the claims asserted in this action. The "Class" is defined as: "all persons employed by Laurel Medical as HMATs between March 6, 2021, until March 6, 2024." To the best of the knowledge and belief of Named Plaintiff and Defendant, there are twenty (20) people in the Class.

The Settlement Agreement and Release of Claims provides for a "Global Settlement Amount" of $65,000.00, inclusive of attorneys' fees and costs, to resolve all claims of the Plaintiff Class for unpaid wages alleged in the lawsuit. The Global Settlement Amount will be allocated as follows: (1) $33,355.00 will be allocated to the FLSA Settlement Fund; (2) $24,145.00, or such other amount approved by the Court, shall be allocated for attorneys' fees and costs; and (3) $7,500, or such other amount approved by the Court, shall be allocated to Named Plaintiff for a service award.

The amount of settlement distributions to the members of the FLSA Settlement Class who opt into the class shall be determined by formula. The settlement fund will be allocated proportionately amongst the Class Members based upon "a pro-rated portion of the Net

Settlement Amount based on the proportional number of pay periods which each Class Member performed work which would have been subject to the Collective Class Period, less all applicable withholdings and previously authorized deductions," as identified by Laurel Medical's internal records. Based upon the Net Settlement Amount, each Class Member will be entitled to receive a gross payment at their overtime rate of pay for approximately 2.5 hours during each pay period. Each Class Member's proportionate share of the Net Settlement Amount will be determined based upon these factors, and the Net Settlement Amount will then be apportioned accordingly by Class Counsel. Fifty percent (50%) of all settlement distributions will be deemed wages, subject to applicable withholdings and previously authorized deductions and reported on a W-2 Form. The other fifty percent (50%) will be deemed interest and liquidated damages and reported on an IRS Form 1099 in Box 3.

Named Plaintiff's counsel engaged in numerous discussions with Named Plaintiff and counsel for Defendant to determine the scope of Named Plaintiff's claims and the defenses which would be asserted. Based upon these discussions, Named Plaintiff's counsel determined that questions existed with respect to whether some or all of the claimed wages were actually compensable. Furthermore, arguments were raised by Defendant that they acted in good faith and would potentially be able to defend against an assessment of liquidated damages as well as limiting the class period to two (2) years prior to the filing of the action. The FLSA Settlement Fund, therefore, provides compensation to participating Class Members of a significant portion of the wages allegedly due during the relevant period of the Complaint, as well as liquidated damages, exclusive of attorneys' fees and costs.

Importantly, no putative Class Members must participate, nor must any putative Class Member submit anything to opt out of the Settlement in order to preserve any claim. Instead,

only putative Class Members who affirmatively participate will release their alleged claims. Any unclaimed portion of the FLSA Settlement Fund will revert back to Defendant.

The Release provision is narrowly tailored to the wage and hour claims asserted in the case, and applies only to those members of the Plaintiff Class who choose to accept the Settlement benefit. "Released Claims" is defined in the Settlement Agreement, *in toto*, as follows:

> any and all wage and hour and wage payment claims of whatever nature, which a Class Member may have against any of the Released Entities, as defined in paragraph 1.13 herein, whether known or unknown, as a result of any action or omission committed any time on or before the date of the Court's approval of the Settlement Agreement, whether under federal, state, and/or local law, statute, ordinance, regulation, common law, or other source of law, including but not limited to the FLSA, PMWA, PWPCL, all as amended, including without limitation any and all claims for unpaid overtime compensation, minimum wages, other wages, expenses, liquidated damages, premium pay, interest, attorneys' fees, injunctive relief, or penalties related to overtime, minimum wages, expenses, and other alleged wage and hour violations.

The proposed notice to the putative Class Members (Exhibit B of Settlement Agreement) fully and clearly informs them of the material terms of the Settlement, their rights to participate or not, the possible limitations on their rights should they not participate, the precise scope of the release, and the procedure to implement whatever decision each individual makes regarding the Settlement. The Payment Check itself will state, "By endorsing this check, I hereby release all federal and state wage and hour claims that have been asserted or could have been asserted in the lawsuit titled *Joshua Sturtz, individually and on behalf of all others similarly situated v. Laurel Medical Supplies, Inc. d/b/a Laurel Medical Solutions,* Case No. 3:24-cv-00050-KRG in the United States District Court for the Western District of Pennsylvania, including known and unknown claims."

In addition to compensating Plaintiffs for their alleged unpaid overtime wages, the Settlement provides for a $7,500.00 service award to Named Plaintiff, Joshua Sturtz, who was instrumental in pursuing this case, and diligently worked with Named Plaintiff's counsel to investigate the case and further the litigation, all for the benefit of those employees who will recover under this Settlement.

Procedurally, the Parties agree that within fourteen (14) days of the Court's Order approving the settlement, Named Plaintiff's counsel will send the approved Notice to all putative Class Members, along with a self-addressed stamped return envelope. Class Members will be given forty-five (45) days from the date of mailing to return the Opt-In form, as measured by the postmark on the return envelope. Class Members will also have the option of returning the Opt-In form via fax or email. Within fourteen (14) days following the closing of the Opt-In period, Named Plaintiff's counsel will forward to Defendant all of the returned Opt-In forms. Within twenty-one (21) days following receipt of the Opt-In forms, Defendant will issue payment to all putative Class Members who have returned the Opt-In forms within the prescribed time frame.

## Argument

**I.    The Standard and the One-Step Procedure for FLSA Opt-In Settlement Approval**

Because the Settlement has no binding effect on absent class members unless they affirmatively accept the benefits of the Settlement, it is governed by FLSA procedures rather than Rule 23, which is binding on absent class members unless they affirmatively opt *out* of the class. *Compare, e.g., Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 874 (1984) ("a judgment in a properly entertained class action is binding on class members in any subsequent action") *and Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (explaining purpose of Rule 23 notice is to advise class members they will be *bound* by judgment unless they request

exclusion) *with Greenwald v. Phillips Home Furnishings Inc.*, 2009 WL 259744 at *4 (E.D. Mo., Feb. 3, 2009) ("A collective action under [the FLSA, 29 U.S.C.] § 216(b) differs from class actions brought under Rule 23 . . . . A primary distinction is that under FLSA a similarly situated employee must 'opt in' to the collective action to be bound by it.").

In scrutinizing a settlement, "the primary focus of the court's inquiry in determining whether to approve the settlement of an FLSA collective action is not, as it would be for a Rule 23 class action, on due process concerns, but rather on ensuring that an employer does not take advantage of its employees in settling their claims for wages." *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 719 (E.D. La. 2008) (internal citations omitted). Accordingly, courts grant final approval to FLSA opt-in settlements in a single step, rather than the Rule 23 procedure that utilizes preliminary approval, notice to the class members who will be bound unless they opt out, and final approval after an "opt out" period. *E.g., Hill v. World Wide Tech. Holding Co., Inc.*, 4:11CV02108 AGF, 2012 WL 5285927 (E.D. Mo. Oct. 25, 2012) (granting final approval of FLSA settlement as to both the named plaintiff and all eligible FLSA collective class members who elect to opt-in to the settlement).

"When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Simmons v. Enterprise Holdings, Inc.*, 2012 WL 2885919 at *1 (E.D. Mo. July 13, 2012) (citing *Lynn's Food Stores,* 679 F.2d at 1353). "Accordingly, as long as the Court is satisfied that a settlement reached in adversarial proceedings represents a fair and equitable compromise of a bona fide wage and hour dispute, the settlement may be approved." *Id.* Court review of an FLSA settlement is two-pronged. First, the Court must be satisfied that the settlement was the product of "contested litigation."

Second, the Court must inquire as to whether the settlement involves a fair and reasonable resolution of a *bona fide* dispute between the parties. *Lynn's Food Stores,* 679 F.2d at 1353-1354. Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness. *Id.* at 1354. If the proposed settlement reflects a reasonable compromise of contested issues, the Court should approve the settlement in order to promote the policy of encouraging settlement of litigation. *Id.*

"While the Third Circuit has not directly addressed the factors to be considered in deciding motions for approval of FLSA settlements, district courts have typically looked to the considerations set forth in *Lynn's Food*." *Brumley v. Camin Cargo Control, Inc.*, CIV.A. 08-1798 JLL, 2012 WL 1019337 (D.N.J. Mar. 26, 2012). This Court should readily conclude the Parties' Settlement here is a reasonable resolution of a *bona fide* dispute in contested litigation.

## II. The Putative Opt-In Class Members are Similarly Situated

As a threshold matter, the Court may readily conclude that the employees eligible to participate in the settlement are "similarly situated" within the requirements of 29 U.S.C. § 216(b) of the FLSA, which is the standard for maintenance of an FLSA collective action. As defined by the Class, this constitutes all persons employed as HMATs by Laurel Medical from March 6, 2021, until March 6, 2024. Because of these key similarities, including job duties/functions and compensation policy, location and time frame, the Court may readily conclude the employees are "similarly situated" for purposes of effectuating this Settlement.

## III. The Proposed Settlement Is the Product of Contested Litigation

The proposed Settlement is the product of contested litigation, and this conclusion is not altered by the Parties' ability to compromise this case early in the proceedings. In his Complaint, Named Plaintiff presented detailed allegations regarding Laurel Medical's policies and practices.

In their Answer, Defendant denied Named Plaintiff's material factual allegations and asserted numerous defenses that they argued would defeat Named Plaintiff's and putative Class Members' claims in whole or in part. Through cooperative, informal exchange of payroll data and other relevant job-related information, the Parties extensively investigated Named Plaintiff's claims. In addition to their factual investigation, the Parties also analyzed the various legal issues implicated in this case, including the standards for assessing and defending claims for liquidated damages under the FLSA. The settlement of this lawsuit was achieved after the Parties conducted a Mediation before Sally Cimini, Esquire of Sally Cimini Law & Mediation, LLC on July 10, 2024, and only after the exchange of key information on disputed fact issues and the vetting of the Parties' positions through arms-length negotiation in the course of several months of protracted settlement discussions.

### IV. The Proposed Settlement Reflects a Fair and Reasonable Resolution of a *Bona Fide* Dispute Between the Parties

The second prong of the Court's settlement approval inquiry focuses on two issues. The first issue is confirming the existence of a *bona fide* dispute between the Parties under the FLSA. The second issue involves a review of the fairness and reasonableness of the proposed Settlement. Both are easily satisfied.

### A. A *Bona Fide* Dispute Existed Between the Parties

Named Plaintiff alleges Defendant violated the FLSA, PMWA, PWPCL because they failed to pay certain wages. Defendant denies Named Plaintiff's allegations, contend that Laurel Medical's policies and practices comply with all applicable laws, and asserts numerous affirmative and other defenses.

If Named Plaintiff's allegations ultimately proved correct, Defendant would be faced with the prospect of a substantial monetary verdict exceeding the amount of the Settlement,

10

including additional potential damages for willfulness and statutory liquidated damages, as well as an obligation to pay legal fees and costs incurred by Named Plaintiff to prosecute the case through trial instead of the comparatively small fees incurred to obtain this early resolution. If Defendant prevailed, then Named Plaintiff and the putative Class Members would obtain no recovery of any kind or a much smaller recovery than effectuated through the settlement. The Parties' positions were staked out in the Parties' pleadings and during the course of the Parties' settlement negotiations, and the Court should readily conclude a *bona fide* dispute between the Parties existed.

### B.     The Proposed Settlement Is Fair and Reasonable

This Settlement was the product of the aforementioned Settlement Conference and arm's-length negotiations by experienced counsel and compensates Named Plaintiff and putative Class Members for a significant portion of their alleged unpaid wages during the applicable time period plus approximately liquidated damages, free and clear of attorneys' fees and expenses and Named Plaintiff's service award. The Settlement eliminates the inherent risks both sides would bear if this complex litigation continued to resolution by a jury. As a compromise, and to provide Defendant with the certainty of a ceiling on liability, the Global Settlement Amount is capped at $65,000.00. Named Plaintiff's counsel supports this compromise, in view of the disparity of factual testimony anticipated amongst both plaintiff and defense witnesses, and because the time upon which the FLSA Settlement Fund is based represents a significant portion of the wages allegedly due to the putative Class Members as represented by data extracted by Laurel Medical's computer systems. In sum, these are patently reasonable compromises in light of the risks and costs associated with prosecuting the case to a jury trial. Under these circumstances, a presumption of fairness should attach to the Settlement. *See Lynn's Food*

*Stores*, 679 F.2d at 1354 (the adversarial nature of a litigated FLSA case indicates fairness). Several specific factors confirm the Settlement's fairness and reasonableness:

### 1. Public Policy Favors Settlements

Public policy favors settlements. This is particularly true in complex cases such as this, where substantial resources can be conserved by avoiding the time, cost, and rigor of protracted litigation. *See Lynn's Food Stores*, 679 F.2d at 1354 (public policy encourages settlement of FLSA litigation); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor"). The Parties' early settlement is a model of adversarial positions coupled with cooperative exchange of critical information to enable the Parties and their counsel to evaluate the claims and defenses without protracted expense and burden on the Court.

### 2. Substantial Obstacles Exist if the Litigation Continues, and the Settlement Offers Substantial, Immediate Relief

The Parties disagree about the merits of Named Plaintiff's and the Class Members' claims and the viability of Defendant's defenses. If litigation continues, Named Plaintiff and the putative Class Members would face many obstacles, including (i) the risk that the case would not be certified for a class or collective action; (ii) challenges to proving damages; (iii) risk of decertification; and (v) the inherent risks of a jury trial. The proposed Settlement brings immediate monetary value to each of the Class Members who elect to participate. Although the recovery at trial potentially could have been greater than sums received under the Settlement Agreement, it is also possible the recovery would have been less, or nothing at all. For instance, Defendant at the outset contended that the putative Class Members were properly compensated under state and federal law, and that any failure to pay Laural Medical's HMAT employees was in good faith. If the jury were to agree with Defendant, Named Plaintiff and the putative Class

Members would likely recover little or nothing. Additionally, proposed Settlement covers a three year statute of limitations, and certain Class Members may not receive any compensation if a jury were to conclude that a two year statute of limitations was more appropriate.

Moreover, Name Plaintiff would have to obtain class or collective action certification to present class-wide claims to a jury. Although Defendant concedes the potential class members are similarly situated for settlement purposes, they would have vigorously argued that various differences in job duties and responsibilities preclude class and collective action certification had litigation continued. Absent settlement, this issue remained uncertain.

In the face of these material disputes, it is significant that this Settlement brings Named Plaintiff and putative Class Members meaningful monetary value now, not years from now, and provides certainty regarding the outcome. *In re King Resources Co. Securities Litig.*, 420 F. Supp. 610, 625 (D. Colo. 1976) ("the Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future."). "In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush." *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974) (citing cases).

### 3. This Was a Complex and Potentially Lengthy Case

This case involved complex issues of fact and law which remain unanswered and would have to be resolved at or before trial. Named Plaintiff would need to compile and adduce documentary evidence, representative testimony, and possibly expert testimony sufficient to establish liability and damages for the entire class. Regardless of the outcome at trial, post-judgment appeals would be likely. Accordingly, the complexity and prospective expense and duration of litigation weigh in favor of approving the proposed Settlement.

### 4. The Parties and Their Counsel Support the Settlement

After thorough investigation of the facts and law, the Parties have gained a comprehensive knowledge of their respective claims and defenses. Additionally, the Parties have ample evidence to make an informed assessment of the proposed Settlement. "[T]he Court should also consider the judgment of counsel and the presence of good faith bargaining between the contending parties. Courts have consistently refused to substitute their business judgment for that of counsel." *Id.* Based on their knowledge of the case and the applicable law, as well as their experience in similar FLSA actions, the Parties' counsel believe the Settlement is fair, reasonable, and adequate. The Parties respectfully suggest this Court should conclude the proposed Settlement reflects a fair resolution of a *bona fide* dispute under the FLSA and approve the Settlement.

## V. The Named Plaintiffs Should Receive a Service Award

The time and dedication that an individual devotes to a lawsuit that inures to the common benefit of others warrants a service award "above and beyond what the typical class member is receiving." *Cimarron Pipeline Constr., Inc. v. National Council on Compensation Ins.*, 1993 WL 355466 at *2 (W.D. Okla. June 8, 1993) (awarding $10,000 service award to each of three class representatives); *Camp v. Progressive Corp.*, 2004 WL 2149079 at *7 (E.D. La. Sept. 23, 2004) (approving up to $10,000 in service awards to class representative and other plaintiffs). Service awards "are particularly appropriate in the employment context [because] the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (awarding $10,523 out of class fund of $75,000).

Named Plaintiff, Joshua Sturtz, substantially assisted counsel in achieving this Settlement on behalf of the class, and should each receive a service award. Named Plaintiff was responsible for initiating this action and provided invaluable guidance and assistance on numerous occasions to Named Plaintiff's counsel. Named Plaintiff also assisted counsel in evaluating Defendant's proffered defenses. There is no question that the other employees have substantially benefited from Named Plaintiff's actions. Without Named Plaintiff's efforts, this case would not have been brought and this Settlement would not have been achieved. In light of these efforts, payment of a $7,500.00 service award to Mr. Sturtz is amply justified.

## VI. Named Plaintiff's Counsel Should be Awarded Their Fees and Expenses.

Under the FLSA, plaintiffs are entitled to reasonable attorneys' fees spent in recovering unpaid wages. 29 U.S.C. § 216(b). An award of attorney fees to class counsel is also appropriate under Rule 23(h). The typical method for awarding attorneys' fees in common fund cases, such as this case, is to award a percentage of the settlement funds. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); see *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (l0th Cir. 1995); *Gottlieb v. Barry*, 43 F.3d 474, 482 (l0th Cir. 1994). The common fund doctrine "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense." *Brown v. Phillips Petroleum Company*, 838 F.2d 10 451,455 (l0th Cir. 1988) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (l980)). Thus, the percentage award results "in a sharing of the fees among those benefited by the litigation." *Brown*, 838 F.2d at 454.

In cases involving a fee-shifting statute, the Supreme Court has expressed a preference that the parties agree to the amount of the fee: "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v.*

*Eckerhart*, 461 U.S. 424, 437 (1983). Following that advice, and desiring to avoid a second litigation over fees, the Parties have agreed to settle their dispute over the award of attorneys' fees, costs, and expenses.

The agreed fee amount of $21,654.00[2] represents 33 1/3% of the total FLSA Settlement Fund and is eminently reasonable. *See Wiles v. Southwestern Bell Tel. Co.*, 2011 WL 2416291, at *4-5 (W.D. Mo. June 9, 2011) (awarding 33 1/3% of the common fund in attorneys' fees); *Johnson v. Brennan*, 2011 WL 4357376 at *13 (S.D.N.Y. September 16, 2011) (awarding 33 1/3% of recovery, stating "In wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award."); *In re Milos Litigation,* 2011 WL 6015705 (S.D.N.Y. 2011) (33 1/3%); *Williams v. Aramark Sports, LLC,* 2011 WL 4018205 at *10 (E.D. Pa. Sept. 9, 2011) (33 1/3%, stating that percentage of recovery is favored method in "common fund" cases."); and *Boone v. City of Philadelphia*, 668 F. Supp. 693, 714 (E.D. Pa. 2009) (citing a study of 289 class action settlements in the Third Circuit indicating that the average percentage awarded was 31 1/7% and the median was 33 1/3%).

Named Plaintiff's counsel should not be penalized for achieving this expeditious benefit for the Class. A fee reduction based on an expeditious settlement would only incentivize unnecessary litigation and use of the Court's resources. *See In re Iowa Ready-Mix Concrete Antitrust Litig.*, 2011 WL 5547159 at *1-3 (N.D. Ia. Nov. 9, 2011) (*sua sponte* increasing attorney fee from 33.33 % to 36.04 % in recognition of efficient early settlement).

Named Plaintiff's counsel fee has been agreed by the Parties and will be paid without diminishing the fairness of the recovery to the Class. Pursuant to the prescription of the Supreme

---

[2] Named Plaintiff's counsel also seeks an additional $2,500.00 from the Global Settlement Amount as reimbursement for out-of-pocket costs associated with the litigation, bringing the total requested and negotiated award to Named Plaintiff's counsel to $24,145.00.

Court in *Hensley*, 461 U.S. at 437, the Court should not disturb Parties' settlement of the amount of Plaintiffs' counsel fees.

### Conclusion

This Settlement was reached as a result of contested litigation and resolves a *bona fide* dispute between the Parties. The Parties engaged in thorough investigation of the facts and law and reached a Settlement that eliminates the Parties' respective risks and minimizes their expenses and the burden on the Court. The Settlement is fair, reasonable, and adequate, and provides Named Plaintiff and putative Class Members a FLSA Settlement Fund which consists of a significant portion of the unpaid wages allegedly due as well as an equal amount in liquidated damages, free and clear of attorneys' fees or expenses. For the reasons stated herein, Named Plaintiff respectfully requests that the Court approve the Settlement.

Respectfully Submitted:

**WEISBERG CUMMINGS, P.C.**

July 22, 2024
Date

*/s/ Derrek W. Cummings*
Derrek W. Cummings
dcummings@weisbergcummings.com

Larry A. Weisberg
lweisberg@weisbergcummings.com

2704 Commerce Drive, Suite B
Harrisburg, PA 17110-9380
Phone: (717) 238-5707
Fax: (717) 233-8133

*Counsel for Named Plaintiff
and Collective Plaintiff Class*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the date applied by the Court's ECF filing system, I electronically filed the foregoing with the Clerk of Court using CM/ECF.

*/s/ Derrek W. Cummings*
Derrek W. Cummings
